UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| MELODIE SHULER, *et al*., |
| *Plaintiffs*, |
| v. |
| MOSES DICKS, *et al*., |
| *Defendants*. |

Civil Action No. 24-1292 (RDM)

MEMORANDUM OPINION

Plaintiffs Melodie Shuler and her emancipated son, Meleik Delaney, both of whom are proceeding *pro se*, filed this action against the District of Columbia, several employees of the D.C. Department of Motor Vehicles ("DMV"), Mayor Muriel Bowser, and D.C. Attorney General Brian Schwalb, alleging constitutional, statutory, and common law violations arising from their repeated attempts to convert Delaney's Georgia driver's license to a D.C. license in March 2024. *See generally* Dkt. 1 (Compl.). Defendant Moses Dicks and Jane Does 1–4, all employees of the DMV, allegedly impeded Delaney's "ability to get his Driver's License because Dicks and three of his staff members were incompetent." *Id.* at 4 (Compl. ¶ 9).

Defendants now move to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 9. For the reasons set forth below, to the extent that Shuler seeks to recover damages based on her emancipated son's difficulty converting his license, the Court will **DISMISS** those claims without prejudice for lack of Article III standing. In all other respects, the Court will **GRANT** Defendants' motion and will **DISMISS** Plaintiffs' federal claims for failure to state a claim and, finally, **DECLINES** to exercise supplemental jurisdiction over their remaining common law claims.

## I. BACKGROUND

For purposes of deciding Defendants' motion to dismiss, the Court will accept Plaintiffs' factual allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court is further mindful that "*pro se* pleadings should be liberally construed," *Nichols v. Vilsack*, No. 13-1502, 2015 WL 9581799, at *1 (D.D.C. Dec. 30, 2015) (quotation marks omitted), and that Plaintiffs must be afforded "the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation marks omitted). That said, the Court notes that Plaintiffs' allegations are, at times, difficult to follow or contradictory. The Court will, however, do its best to discern what Plaintiffs contend caused them constitutional, statutory, and common law injury.

This case arises from Plaintiffs' four visits to the Benning Road DMV service center in Washington, D.C., between March 7 and March 15, 2024, for the purpose of converting Delaney's Georgia driver's license to a D.C. driver's license. Dkt. 1 at 2–6 (Compl. ¶¶ 4–19). During the first visit on March 7, Moses Dicks and Jane Doe 1, both of whom worked at the DMV, instructed Shuler to add Delaney's name to her lease, so he could then use the lease to prove that he resides in the District of Columbia (as required to covert his license). *Id.* at 8 (Compl. ¶ 29). "After . . . Delaney was added to the lease[,] both Plaintiffs returned to the DMV Service center." *Id.* at 9 (Compl. ¶ 31). Dicks, however, told Plaintiffs that they would "have to return a third time because[,] although the information was what" he had instructed them to bring, the DMV also needed Shuler's D.C. driver's license or other identification ("ID") to complete the process. *Id.* at 9 (Compl. ¶¶ 32–33). After Shuler explained that she did not possess a driver's license or ID, Dicks "stated that a piece of governmental mail would be

sufficient." *Id.* (Compl. ¶ 36).  Dicks further explained that the DMV needed "a governmental document with the address noted in the lease mailed to . . . Delaney." *Id.* at 10 (Compl. ¶ 37).

On their third visit, Plaintiffs returned with "another document addressed to the residence noted in the lease with . . . Delaney's name noted on it." *Id.* at 10 (Compl. ¶ 38).  Plaintiffs' description of what happened next is difficult to follow.  Despite alleging that they were told during their *second* visit that the DMV needed Shuler's D.C. driver's license or ID, Plaintiffs allege they were told "for the first time" during their *third* visit "that . . . Shuler had to have a District of Columbia identification card or driver's license to convert . . . Delaney's driver's license." *Id.* at 10 (Compl. ¶ 38).  This requirement, apparently, prompted Delaney—who was not yet 18 years old—to "state[] that he was emancipated," a fact that Plaintiffs contend they also revealed during their second visit. *Id.* 10–11 (Compl. ¶¶ 40–42).  According to Plaintiffs, they were then told—despite prior representations to the contrary—that "Delaney needed to bring in his emancipation papers." *Id.* at 4 (Compl. ¶ 10).  When "Shuler asked exactly what was needed and if the only issue was [Delaney's] emancipation papers," Dicks allegedly "refused to process . . . Delaney['s] information or [to] allow him to bring the additional information to the DMV to obtain his license." *Id.* at 11 (Compl. ¶ 44).  Dicks allegedly said, "We are done call DMV adjudication." *Id.*

In apparent tension with their allegation that the DMV refused to allow Delaney "to bring the additional information to the DMV," Plaintiffs further allege that they returned to the DMV on March 15, 2024 "with the emancipation papers," but they faced yet additional hurdles. *Id.* at 11 (Compl. ¶¶ 44–45).  According to Plaintiffs, they were first told that they needed "a certified copy of [Delaney's] birth certificate," which they retrieved, and were then told that the lease that they had presented to establish Delaney's D.C. residency contained "an alteration." *Id.* at 11

(Compl. ¶ 45).  Plaintiffs do not describe the alteration at issue, nor do they dispute that the lease was, in fact, altered in some fashion.

According to Plaintiffs, their request to convert Delaney's driver's license was denied due to his age.  *Id.* at 4 (Compl. ¶ 13).  They fail to explain what they mean by this, but the Court's best guess (and neither the Court nor Defendants should not be required to guess what Plaintiffs intend to allege) is that, if Delaney was 18, he could have converted his Georgia driver's license to a D.C. driver's license without facing these difficulties.  They allege, for example, that the "DMV requires information for a minor" that "is rarely if ever possible to be in a minor's name and legally impossible in most instances even for a person [who] is emancipated."  *Id.* at 12 (Compl. ¶ 48).  In contrast, "the policy allows college and university students to get documentation [from] educational institutions but does not have the same policy for high school students like . . . Delaney."  *Id.*

Plaintiffs filed this lawsuit on May 2, 2024, asserting an array of claims against Defendants, including a Fifth Amendment equal protection claim (Count 1), a procedural due process claim (Count 2), a substantive due process claim (Count 3); a First Amendment retaliation claim (Count 4); a civil rights conspiracy claim under 42 U.S.C. § 1985 (Count 8); and various non-federal claims including negligence (Count 5), violations of D.C. Code §§ 50-1401.0l(a)(l), 253, 256, 2-1402.01, 2-1402.11 (Count 6), supervisory liability based on negligence and failure to train (Count 7), defamation (Count 9), intentional infliction of emotional distress (Count 10), and negligent infliction of emotional distress (Count 10).  Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  LEGAL STANDARD

Pleadings by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  But even a *pro se* litigant must comply with the Federal Rules of Civil Procedure.  *See Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).  Under Federal Rule of Civil Procedure 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although "detailed factual allegations" are not required, the complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

Federal courts are "obligated to consider *sua sponte* issues," like standing, that "go[ ] to [their] subject-matter jurisdiction,"  *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *see also Brookens v. Am. Fed. of Gov't Employees*, 315 F. Supp. 3d 561, 565 (D.D.C. 2018).  Article III standing requires an injury-in-fact, that is fairly traceable to the challenged action, and that is likely to be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  The plaintiff bears the burden of establishing standing, and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Id.* at 561.  At the pleading stage, that means that the plaintiff must allege facts sufficient to establish at least a "plausible" theory of standing to sue.  *Cuti v. Garland*, 633 F. Supp. 3d 97, 102 (D.D.C. 2022) (discussing application of the *Lujan* standard following *Iqbal*).

### III.  ANALYSIS

**A.   Standing**

Before turning to the substance of Plaintiffs' claims, the Court pauses to distinguish between Shuler and Delaney's claims.  Beyond the fact that Shuler accompanied her emancipated son to the DMV on multiple occasions and experienced frustration in dealing with the agency, she does not allege that she was deprived of anything beyond the time she expended and the indirect benefit that she hoped to obtain from her son's efforts to obtain a D.C. driver's license.  It was Delaney, however, who sought a driver's license, and it is Delaney who was unsuccessful in those efforts.  Nor does Shuler purport to bring suit on behalf of her emancipated son, who has appeared *pro se* on his own behalf.

Article III "requires the party who invokes the court's authority to 'show that he *personally* has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'"  *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc*., 454 U.S. at 472 (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)) (emphasis added).  Moreover, in addition to this constitutional requirement, a plaintiff seeking to invoke the Court's jurisdiction "generally must assert his own legal rights and interests, [she] and cannot rest h[er] claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  That is particularly so when, as here, the party whose legal rights are at stake has separately appeared in the case.

The Court, accordingly, concludes that Shuler may not assert her son's legal rights, if any, in this action.  She lacks standing, for example, to allege that Defendants violated *his* right to obtain a driver's license or deprived him of *his* right to due process.  Nor can she appear as his representative in this action.  That limitation takes on particular importance in this case because,

although Shuler was once a lawyer, it appears that she has been disbarred. *See In re Shuler*, 177

A.3d 615 (D.C. 2018); *see also Attorney Grievance Comm'n of Maryland v. Shuler*, 164 A.3d

209, 228 (Md. 2017). If that is correct, she is entitled to appear *pro se* on her own behalf (to the

extent she has standing to sue), but she may not represent her emancipated son or anyone else in

litigation. The complaint and opposition briefs represent that Shuler and Delaney are both

proceeding *pro se*, and thus Plaintiffs at least implicitly represent that they have both participated

in the preparation of the filings to date. Unless Shuler is reinstated to the bar, however, she may

not act as her son's attorney in this case.

The Court will, accordingly, dismiss any claims that Shuler seeks to assert based on her

son's legal rights for lack of standing. With that limitation in mind, the Court turns to Plaintiffs'

(and, often-times, only Delaney's) substantive claims.

**B.    Plaintiffs' Claims**

1.    *Equal Protection Claim*

A claim brought under the Equal Protection Clause of the Fifth Amendment can take one

of two forms. First, an individual "may claim that he or she received differential treatment by

the government due to membership in a protected class, such as one based on race, national

origin, or gender." *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 122 (D.D.C. 2012).

Alternatively, when the alleged differential treatment is not based on membership in a protected

class, a plaintiff may claim that he or she was "arbitrarily and intentionally treated differently

from others who are similarly situated" and that the government lacks any rational basis for

treating the similarly situated individuals disparately. *Id.* at 122 (internal citations omitted). "A

statutory classification that [does not] proceed[] along suspect lines . . . must be upheld against

equal protection challenge if there is any reasonably conceivable state of facts that could provide

a rational basis for the classification." *Hettinga v. United States*, 677 F.3d 471, 478–79 (D.C. Cir. 2012) (noting that "[t]he challenger bears the burden of showing that the statute is not a rational means of advancing a legitimate government purpose") (internal quotations marks and citations omitted). Plaintiffs' claims fail under both theories.

Plaintiffs first allege that Shuler faced "discrimination on the basis of race[,] . . . age[,] . . . [and] on the basis of her religious, political and social belief of defending her constitutional rights." Dkt 1 at 16 (Compl. ¶ 50(E)). They allege, for example, that Shuler was discriminated against because she and her children "are African-American." *Id.* (Compl. ¶ 50(E)(i)). They also allege that Shawn "Watkin's assertions" that Plaintiffs did not "understand the documentation requirements" "were based on racially preconceive[d] notions that [Plaintiffs] are too dumb" to understand the requirements. *Id.* at 18 (Compl. ¶ 50(L)). And they allege that the District of Columbia "still view[s] black people as less than full citizens" and that this "is nothing but a continuation of the *Dred Scott v. Sanford* case." *Id.* at 19-20 (Compl. ¶ 50(R–S)).

Among other difficulties, all of those allegations are too conclusory to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint does not allege, for example, that Plaintiffs were deprived of any legal right because of their race. It does not identify how the District of Columbia or the individual defendants treated Plaintiffs differently because of their race. It does not point to any comparators that might support a plausible claim of systemic or discrete discrimination. Nor does it point to any other facts that might support a plausible inference of discrimination. Similarly, the complaint fails to identify any facts that might support a plausible claim of discrimination based on any other classification, such as religion. It is not enough merely to allege that a member of a suspect class was treated poorly.

Plaintiffs also allege that the District of Columbia discriminates against minors in the issuance of driver's licenses—presumably, 17-year-olds, D.C. Code. § 50–1401(a)(1) (authorizing the Mayor "to issue a new or renewed motor vehicle operator's permit . . . to any individual 17 years of age or older")—by making it more difficult to establish residency.[1]  This Court examines an age-based equal protection challenge under rational basis review. *See Colton v. Clinton*, No. 9-1772, 2010 WL 3940994 at *6 (D.D.C. Sept. 27, 2010).  Plaintiffs allege, in particular, that the District of Columbia "ha[s] policies, practices and customs of failing to recognize, train and understand the rights of emancipated persons." *Id.* at 12 (Compl. ¶ 46). According to Plaintiffs, the information that the District of Columbia requires a minor to proffer "to get [a] driver's license" discriminates on the basis of age, because it gives "person[s] over the age of 18 a better ability to get their driver's license." *Id.* at 12–13 (Compl. ¶ 48).  Minors, according to Plaintiffs, "rarely if ever" have access to the information required to get a driver's license, such as "utility and/or telephone bills, unexpired homeowner's or renter's insurance policy, home security bill[s], [or] car/personal loan insurance." *Id.*  As a result, the District of Columbia "burdens [minors] because that documentation requested is not normal documentation that the age group has." *Id.*

---

[1] Although Plaintiffs allege that Delaney was denied his driver's license "because of his age," Dkt. 1 at 4 (Compl. ¶ 13), the complaint never indicates how old he was when he sought to convert his license.  The statute prohibits any individual under the age of 17 from obtaining a license, expect for those seeking a learner's permit or a provisional license.  *See* D.C. Code. § 50–1401(a)(2) ("The Mayor is authorized to issue a new learner's permit valid for 2 years to any individual 16 years of age or older."); *id.* § 50–1401(2A) ("The Mayor is authorized to issue a new or renewed provisional motor vehicle operator's permit . . . to any individual 16 and 1/2 years of age or older").  To the extent Delaney contends that he was denied a driver's license merely because he was under the age of 17, that contention would fail as a matter of law. Plaintiffs do not argue that it would be unreasonable to restrict the availability of drivers' licenses in this manner.

For the reasons explained above, Shuler lacks standing to assert this claim, and Delaney's

claim fails on the merits. Among difficulties, his argument fails to grapple with the multiple,

"reasonably conceivable" legitimate bases for documentation requirements at issue. To start,

emancipation is the exception to the typical presumption that minors live with and are subject to

the control of their parents. This case posed difficulties because Shuler lacked the type of

identification that the DMV requested—she did not have an official ID or driver's license. That,

then, led to questions about Delaney's status based on his emancipation. Under those

circumstances, it is certainly reasonable for the DMV to demand evidence of Delaney's

residence, and by Plaintiff's own allegations, some question existed about "an alteration

contained in the lease" he presented. Dkt. 1 at 11 (Comp. ¶ 45). In any event, Delaney does not

allege that the asserted concern about "an alteration" was discriminatory. He only alleges that

the relevant requirements for documentation are discriminatory, yet he has failed to allege any

plausible basis to conclude that those requirements fail to clear the low bar of rational basis

scrutiny. *Hettinga*, 677 F.3d at 479.

The Court will, accordingly, grant Defendants' motion to dismiss Plaintiffs' equal

protection claim (Count 1).

    2.    *Due Process Claims*

        a. Procedural due process

Plaintiffs also assert a Fifth Amendment procedural due process claim (Count 2), alleging

that Delaney had "the right to convert the driver's licenses from out of state to the District of

Columbia," Dkt.1 at 22 (Compl. ¶ 56), and that by "establishing a documentation process [that]

is not rationally related to governmental purpose," Defendants denied Delaney "privileges and

immunities guaranteed under the law of the District of Columbia." Dkt. 1 at 22 (Compl. ¶ 59);

Dkt.1 at 23 (Compl. ¶ 63). "To state a procedural due process claim, a plaintiff must establish

that (1) he had a protected property or liberty interest; (2) he was knowingly, but not negligently,

deprived of that interest; (3) without adequate procedural remedies." *Steinberg v. District of

Columbia*, 901 F. Supp. 2d 63, 75 (D.D.C. 2012) (internal citations omitted).

Once a driver's license is issued, it cannot be permanently suspended without appropriate

procedural safeguards. *See Gilles v. Touchstone*, 676 F. Supp. 341, 344 (D.D.C. 1987)

("Procedural due process requires that a fair hearing be held prior to permanent suspension of a

driver's license."); *Zorgani v. District of Columbia*, No. 17-2360, 2022 WL 1491133, at \*7

(D.D.C. May 11, 2022) (citing *Bell v. Burson*, 402 U.S. 535, 539 (1971)). But that is not what

happened here; the complaint does not allege that Delaney's driver's license was suspended or

revoked without procedural safeguards.

Determining what the complaint does allege, however, is more difficult. Reading the

complaint in the light most favorable to Delaney (once again, Shuler lacks standing to assert this

claim), he alleges that he was deprived of procedural due process because the services provided

by the DMV were conducted in an arbitrary and inconsistent manner. Dkt. 1 at 22-23 (Compl.

¶¶ 54–65). He claims that he was told conflicting things about the paperwork needed to convert

his Georgia driver's license to a D.C. driver's license, and "the lack of competent investigation

[deprived him of] equal treatment compared with similarly situated persons within the District of

Columbia. *Id.* at 23 (Compl. ¶ 62). And he alleges that Defendants' "failure to ensure that [he]

was provided correct information to obtain his driver's license" caused him "severe emotional

stress in ascertaining how to travel," as well as other emotional and financial harm." *Id.* (Compl.

¶ 65).

11

But neither incompetent "investigation" nor a failure to provide "correct information" constitutes a violation of procedural due process. A plaintiff, moreover—even one preceding *pro se*—bears an obligation to put the Court and the opposing party on notice regarding the nature of his or her claim. Here, the nature of Delaney's due process claim remains elusive. In his opposition brief, he once again seems to maintain that he was deprived of due process because he visited the DMV on multiple occasions and that "on several attempts" "procedures were not followed." Dkt. 12 at 9. But it he simply means that he received incomplete or inaccurate information during his first few visits, that does not state a claim, and, if he means that the DMV declined to follow a binding procedure, he does not identify that procedure.

Finally, in responding to Delaney's due process claim, Defendants observed that—far from being deprived of procedural due process—he does "not appear to have exercised the option to administratively 'adjudicat[e]' the DMV's refusal to convert the license." Dkt. 9 at 6. Although Defendants do not cite the relevant provision, the D.C. Code recognizes that the DMV's "[a]judication functions" include making "determinations on drivers' permits." D.C. Code. § 50-904(1)(G). Delaney's sole response to that seemingly dispositive rejoinder seeks to turn the tables on Defendants, pointing to a note that his mother apparently sent to someone at the DMV indicating that the only process that she found online for "an adjudication" was "an option for contesting tickets." Dkt. 1-1 at 4. Without more, that note—which is neither incorporated nor even mentioned in his due process claim, Dkt. 1 at 22–23 (Compl. ¶¶ 54–65), and which was sent by Shuler, who lacks standing to assert this claim—provides insufficient basis to bring a constitutional claim. If Delaney's due process claim turns on a lack of fair notice of the adjudications process, he needs to allege far more than this. That may prove difficult,

12

moreover, given Plaintiffs' own allegation that Dicks told them to "call DMV adjudications,"

undercutting any suggestion that they were misled or kept in the dark.  *Id.* at 11 (Compl. ¶ 44).

        b.  Substantive due process

     Plaintiffs also bring a substantive due process claim under the Fifth Amendment (Count

3), alleging that their "substantive rights of family association and relations were interfered with

by the denial of . . . Delaney's District of Columbia's driver's license."  Dkt 1. at 24 (Compl.

¶ 69).  They allege that "Shuler as the mother of . . . Delaney has the right to benefit from his

driver's privileges and . . . Delaney has the right to obtain a driver's license to transport his

mother to work, to drive himself to and from work and engage in other activities."  *Id.*  Unlike

the preceding claims, Shuler (along with Delaney) has standing to assert this claim.  But that

does not get either Plaintiff very far, because the complaint fails to state a plausible claim.

     As far as the Court can discern, Plaintiffs' substantive due process claim takes two forms.

First, they seem to allege that Defendants' actions somehow interfered with their rights to

associate as a family and to travel by car together "to and from work and [to] engage in other

activities."  Dkt. 12 at 10.  Plaintiffs cite no authority to support the novel proposition that

substantive due process recognizes such a right.  But their claim fails before even reaching that

question.  They argue that Defendants violated their rights to substantive due process by

providing them with inconsistent information about the documentation required to convert

Delaney's license and that the ultimate documentation requirements were unfair, unequal, and

too demanding.  Moreover, although they allege that they were told at one point, "We are done

call DMV adjudications," Dkt. 1 at 11 (Compl. ¶ 44), Plaintiffs allege that they subsequently

returned to the DMV and were unsuccessful only because the lease that they sought to rely upon

contained "an alteration," *id.* (Compl. ¶ 45).  Notably, they do not allege that they ever attempted

to address that deficiency.  It is a stretch (way) too far to suggest that substantive due process

protects against strict enforcement of the documentation requirements for converting a driver's

license, even when those requirements prevent a son from driving his mother to and from work

or to other activities.

Second, they argue that Defendants' conduct "shocked" the conscience.  Dkt. 12 at 10–

12.  To state a claim on this theory, Plaintiffs would need to allege facts showing that the

relevant D.C. officials "'are guilty of grave unfairness', which requires demonstrating either 'a

substantial infringement of state law prompted by personal or group animus, or a deliberate

flouting of the law that trammels significant personal or property rights.'"  *Elkins v. District of

Columbia*, 690 F.3d 554, 561–62 (D.C. Cir. 2012) (quoting *Silverman v. Barry*, 845 F.2d 1072,

1080 (D.C.Cir.1988)).  "[I]nadvertent errors, honest mistakes, agency confusion, even

negligence in the performance of official duties, do not warrant redress."  *Id.* at 562. "[T]he

doctrine of substantive due process constrains only egregious government misconduct," *George

Wash. Univ. v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003), and Plaintiffs fail to

allege any such egregious misconduct here.

Plaintiffs seem to stake their substantive due process claim on the allegation that the

DMV imposes a greater burden on individuals under 17 by requiring them to submit the same

documents as those over 17 in order to get a D.C. driver's license.  Dkt. 1 at 25 (Compl. ¶ 70).

They fail to explain, however, how this documentation requirement rises to the level of a "grave

unfairness" or "a substantial infringement" of the law sufficient to violate their due process

rights.  *Elkins*, 690 F.3d at 561–62.  To the contrary, their allegations, at most, show "negligence

in the performance" of Defendants' duties, which is insufficient to state a claim.  Because

14

Plaintiffs fail to allege any "egregious government misconduct," the Court will dismiss the substantive due process claim (Count 3). *George Wash. Univ.*, 318 F.3d at 209.

        3.        *First Amendment Claim*

Plaintiffs also assert a First Amendment retaliation claim (Count 4), alleging that Defendants "retaliate[ed] against them based on [Shuler] exercising her [F]irst [A]mendment right by voicing opposition to the repeated false information provided by DMV employees." Dkt. 1 at 27–28 (Compl. ¶ 74). "To state a claim for First Amendment retaliation, a plaintiff must allege that: '(1) he or she engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him or her.'" *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 46 (D.C. Cir. 2021), *aff'd sub nom. Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023) (quoting *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016)). In *Nieves v. Bartlett*, the Supreme Court clarified the causation requirement, holding that "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent retaliatory motive." 587 U.S. 391, 398–99 (2019).

Here, Plaintiffs allege that Dicks retaliated against them because Shuler "voic[ed] opposition to the repeated false information" provided by the DMV employees. Dkt. 1 at 28–29 (Compl. ¶ 74). Plaintiffs claim that Delaney was barred from obtaining his driver's license and that they were excluded from the service center "solely due to the exercise of free speech." *Id.* Other alleged retaliatory acts include Dicks demanding that Plaintiffs go to adjudications, DMV

15

employees failing to provide accurate information on the DMV's licensure policy, and

Defendants Wakins and Miles failing to disclose the names of three other DMV employees.  Dkt.

1 at 28–29 (Compl. ¶¶ 75–78).

Once again, it is difficult to identify any cognizable injury that Shuler sustained, since she

had no legal interest in her son's license or right to an adjudication.  But even assuming that

Shuler could assert a First Amendment claim based on an injury that her son sustained based on

her speech—or that Delaney could assert a claim based on an injury that he sustained based on

his mother's speech, the claim fails as a matter of law.  Among other difficulties, the complaint

fails to allege (1) that Defendants took any retaliatory action sufficient to deter a person of

ordinary firmness from speaking or (2) that, but-for Plaintiffs' speech, the DMV officials would

have granted Delaney's request to convert his license.  As Plaintiffs' complaint makes

abundantly clear, the problem the Delaney faced was that his mother lacked a government ID or

driver's license, and when it became clear that Delaney was emancipated, he lacked the

necessary documentation.  Indeed, much of Plaintiff's complaint is devoted to alleging that the

disparate documentation requirements that apply to emancipated individuals who are not yet 18

and those who are 18 or older are unfair.

Nor can the fact that Dicks eventually gave up and referred Plaintiffs to "DMV

adjudications" support a First Amendment claim.  Dkt. 1 at 11 (Compl. ¶ 44).  At some point,

government employees are entitled to end a conversation that is going nowhere, and that is all

that Plaintiffs allege happened here.  Moreover, Dicks' comment was not the but-for cause of

Delaney's failed effort to convert his license.  To the contrary, Dicks referred Delaney to DMV

adjudications, and, in any event, Delaney and his mother returned on a later occasion and were

unsuccessful, then, only because of "an alteration" in the lease documentation.  *Id.* (Compl.

¶ 45).  On those facts, there are not sufficient allegations for the Court to conclude that Plaintiffs were retaliated against in any manner for their speech.

The Court will, accordingly, dismiss Plaintiffs' First Amendment retaliation claim (Count 4).

        4.        *Civil Rights Conspiracy Claim*

Plaintiffs also allege that Defendants engaged in a civil rights conspiracy under 42 U.S.C. § 1985 (Count 8).  Specifically, they claim that Defendants Dicks and Watkins conspired to violate Plaintiffs' constitutional rights by providing false information in an effort to deny Delaney a D.C. driver's license.  Dkt 1 at 35 (Compl. ¶¶ 106–11).

A plaintiff "seeking to recover under § 1985" must "embark on a two-part task."  *Prince v. D.C.*, No. 22-746, 2022 WL 17415058, at *4 (D.D.C. Dec. 5, 2022).  First, the plaintiff must "allege facts that show an actual conspiracy," which requires showing "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme."  *Id.* (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)); *see also Jean-Baptiste v. Booz Allen Hamilton, Inc.* No. 22-1499, 2024 WL 3551941, at *2 (D.D.C. July 26, 2024) (to state a § 1985 claim, a plaintiff must first "prove the . . . existence of a conspiracy between two or more persons" (quoting *Newman v. Howard Univ. Sch. of L.*, 715 F. Supp. 3d 86, 106-107(D.D.C. 2024))); *Ashborne v. Hansberry*, No. 21-1313, 2024 WL 3471243, at*7 (D.D.C. July 24, 2024) ("To allege a civil rights conspiracy, a plaintiff must put forward factual allegations 'suggesting unity of purpose' or a 'meeting of the minds' among the defendants." (quoting *Rodriguez v. Ed. in Chief*, 285 F. App'x 756, 759 (D.C. Cir. 2008))).  Second, the plaintiff must

allege facts sufficient to establish "'some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' actions' that demonstrates an 'intent to deprive [a person] of equal protection, or equal privileges and immunities." *Prince*, 2022 WL 17415058, at *4 (quoting *Burnett v. Sharma*, 511 F. Supp. 2d 136, 144 (D.D.C. 2007); *see also Newman*, 715 F. Supp. 3d at 107 (plaintiffs seeking to state a § 1985 claim must allege that the harm that "befell [him or her] was *because of [his or her] race*").

Plaintiffs' complaint meets neither requirement.  First, Plaintiffs advance the bare allegation that Defendants "conspired together by providing incorrect information" without any further facts in support.  Dkt. 1 at 35 (Compl. ¶ 108).  Conclusory allegations of conspiracy "without factual support, such as events, conversations, or documents indicating that there was ever an agreement or meeting of the minds between any of the defendants[,] . . . are insufficient." *Prince*, 2022 WL 17415058, at *4 (collecting cases) (internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 678–79 (a complaint must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Second, Plaintiffs fail to allege facts sufficient to establish that Defendants conspired to deny Delaney a driver's license because of their race or other protected status.  As discussed above, Plaintiffs have failed adequately to allege that Defendants discriminated against them on the basis of race, and the complaint contains no allegations regarding any class-based discriminatory animus.

The Court will, accordingly, grant the motion to dismiss the civil rights conspiracy claim (Count 8).[2]

5.    *Non-Federal Claims*

Finally, Plaintiffs allege a series of non-federal claims, including negligence (Count 5), a violation of D.C. Code §§ 50-1401.01(a)(1), 253, 256, 2-1402.01, 2-1402.11 (Count 6), supervisory liability based on negligence and failure to train (Count 7), defamation (Count 9), intentional infliction of emotional distress (Count 10), and negligent infliction of emotional distress (Count 11).  The Court would be authorized to assert supplemental jurisdiction over these claims to the extent that they derive from the same "common nucleus of operative fact," *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), as Plaintiffs' federal claims.  *See* 28 U.S.C. § 1367(a).  But now that the Court has determined that Plaintiffs' federal claims fail to pass muster, the Court "has the discretion to exercise—or decline to exercise—supplemental jurisdiction over any state-law claims that remain."  *Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 190 (D.D.C. 2018) (emphasis omitted); *see also Ali Shafi v. Palestinian Auth.*, 642 F.3d 1088, 1097 (D.C. Cir. 2011) ("Whether to retain jurisdiction over pendent . . . claims after the dismissal of the federal claims is a matter left to the sound discretion of the district court." (quoting *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005))).  Guiding

---

[2] Defendants also assert that Plaintiffs' federal claims fail because Plaintiffs have not adequately alleged any facts sufficient to show municipal liability under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the District of Columbia, and that the individual Defendants are entitled to qualified immunity for Plaintiffs' constitutional tort claims under § 1983.  The Court need not reach either issue because Plaintiffs have failed to adequately allege any constitutional violation.  *See Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) ("[I]n considering whether a plaintiff has stated a claim for municipal liability, the district court must conduct a two-step inquiry . . . First, the court must determine whether the complaint states a claim for a predicate constitutional violation."); *Mpras v. District of Columbia*, 74 F. Supp. 3d 265, 270 (D.D.C. 2014) (quoting *Blackman v. District of Columbia*, 456 F.3d 167, 177 (D.C. Cir. 2006)).

that discretion are "[g]eneral equitable factors . . . including judicial economy, convenience,

fairness, and comity." *Pollard v. District of Columbia*, 191 F. Supp. 3d 58, 82 (D.D.C. 2016)

(quoting *Kyle v. Bedlion*, 177 F. Supp. 3d 380, 400 (D.D.C. 2016)); *see also Deppner*, 325 F.

Supp. 3d at 190–91.

  In the mine run of cases, "the balance of factors . . . will point toward declining to

exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 350 n.7 (1988).  Here, given the numerous deficiencies in Plaintiffs' complaint and the

localized nature of their common law claims, the Court declines to exercise supplemental

jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Plaintiffs' non-federal claims asserted in

Counts 5, 6, 9, 10 and 11.

## CONCLUSION

  For the foregoing reasons, the Court will **DISMISS** most, but not all, of Shuler's claims

for lack of standing, will, in all other respects, **GRANT** Defendants' motion to dismiss

Plaintiffs' federal claims, Dkt. 9, and **DECLINES** to exercise supplemental jurisdiction over

Plaintiffs' remaining common law claims.

  A separate order will issue.

        /s/ Randolph D. Moss
        RANDOLPH D. MOSS
        United States District Judge


Date:  March 24, 2025